**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | |
| ANDREW YAVOICH | * | Case No.:  23-cr-216-ACR |
| Defendant. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*

<u>**DEFENDANT ANDREW YAVOICH'S SENTENCING MEMORANDUM**</u>

## I.  INTRODUCTION

Andrew Yavoich, by and through undersigned counsel, respectfully files this Sentencing Memorandum. Mr. Yavoich has plead guilty to Parading, Demonstrating or Picketing in the Capitol Building, in violation of 40 U.S.C. § 5104 (e)(2)(G). He deeply regrets the choice he made to enter the Capitol Building on January 6, 2021. He humbly requests that the Court consider the facts set forth below in fashioning a fair and just sentence.

*Andrew Yavoich's Background.*

Andrew Yavoich was born on March 27, 1983 in Livingston, New Jersey. He is the oldest of four children born to the marriage of David and Grace Yavoich. Mr. Yavoich had a normal, happy childhood. He had, and has a close relationship with his parents and siblings, and is very grateful for their support. Copies of the letters to the court from his parents and brother are attached as exhibit A to this memorandum.

Mr. Yavoich has always been a hard worker. His father reports that he willingly performed chores around their farm, starting at a young age. During his days in high school, he helped around the farm while still working part time and earning an academic college

scholarship. During his college years, he graduated with honors while simultaneously holding multiple part-time jobs. He has held continuous full-time employment since he graduated from college and earned a master's degree in business administration. It is a cause of significant concern to Mr. Yavoich that he may lose his position with his current employer if he is sentenced to any jail time.

Mr. Yavoich has been interested in government and the political process for some time. His undergraduate degree is in criminal justice administration, and one of his first full-time jobs was working as a juvenile probation officer. He has attended multiple political rallies over the years. He has performed volunteer work inside the White House, and in President's Park.

Unfortunately, his interest in government and in politics has resulted in the offense that brings him before the Court. He entered the U.S. Capitol at approximately 2:49 PM on January 6, 2021, and left at 3:06 PM. While he did not engage in violence of any kind, and entered the Capitol with a line of other people through an open door, he knows that it was illegal for him to do so. He regrets every day that he did not simply walk away. He has tried to make amends for this mistake by pleading guilty and by cooperating with the government in its ongoing investigation.

*Sentencing Request*

Based upon Mr. Yavoich's personal history and character, the nature and circumstances of the offense, his lack of criminal history, the almost nonexistent likelihood of recidivism and his cooperation in the government's investigation, Mr. Yavoich respectfully requests that the Court impose a sentence of probation with community service. Such a sentence would be "sufficient but not greater than necessary" to achieve the legitimate purposes of sentencing. *See*, 18 U.S.C. § 3553 (a).

4857-3509-1325, v. 1

## II. THE LEGAL FRAMEWORK FOR SENTENCING IN THIS CASE

Mr. Yavoich has plead guilty to Count Four of the Information, which charges him with

Parading, Demonstrating or Picketing in the Capitol building in violation of 40 U.S.C. § 5104

(e)(2)(G). The maximum sentence for a violation of Section 5104 (e)(2)(G) is six months

imprisonment or a term of probation for not longer than five years, a fine of not more than

$5000, and an obligation to pay applicable restitution.

The Sentencing Guidelines do not apply in this case.  As a result, Mr. Yavoich's sentence

will be determined by this Court pursuant to the factors set forth in 18 U.S.C. § 3553 (a). The

court's "overarching" duty is to "impose, a sentence sufficient, but not greater than necessary, to

accomplish the goals of sentencing." *Kimbrough v. United States*, 552 U.S. 85, 90

(2007).  Accordingly, "if a District Court were explicitly to conclude that two sentences equally

served the statutory purpose of § 3553, it could not, consistent with the parsimony clause, impose

the higher." *United States v. Ministro–Tapia*, 470 F.3d 137 (2d Cir. 2006).

Because section 5104 (e)(2)(G) is a petty offense, the court may not combine a jail

sentence with probation. The court must choose between the two in imposing its sentence.

*United States v. Little*, ___ F.3d ___, USCA Case No. 22-3018 (D.C. Cir. August 18, 2023).

## III. 18 U.S.C. § 3553 (a) FACTORS

### A. The Nature and Circumstances of the Offense.

Mr. Yavoich admits that he illegally entered the United States Capitol on January 6,

2021. Like every other unauthorized individual who set foot in the Capitol that day, he has been

charged with violating federal law. Unlike many of the other charged defendants, however, Mr.

Yavoich arrived at the Capitol after much of the confrontations with the police had finished, and

4857-3509-1325, v. 1

after the doors to the Capitol had already been forced open. While Mr. Yavoich did not participate in any of the violence that occurred that day, he recognizes that he should not have entered the Capitol when he did.  He does not deny that his conduct was unlawful, and he makes no excuse for it. By his plea and his agreement to cooperate, he publicly and tangibly recognizes his wrongdoing.

Although Mr. Yavoich takes responsibility for his actions, the context of the offense and the background facts should also be considered. Mr. Yavoich came to Washington on January 5, 2021. He had previously attended rallies in support of President Trump in November, and December. He did so to show his support for the President, and because he felt the issues being raised by the President were worthy of consideration.  By January, however, Mr. Yavoich understood that Vice President Biden had won the election, and he came to  Washington to hear what he thought would be President Trump's last speech as President.

Mr. Yavoich arose early on January 6, 2021, to get a good place to watch the speeches at the rally. He arrived at the rally between 4:00 and 5:00 in the morning.  Sometime after he arrived, however, he began to feel very ill. He was sick enough that he decided to go back to his hotel. (Mr. Yavoich later learned that he had contracted the COVID-19 virus). He immediately went to sleep, and did not awaken until almost 2:00 in the afternoon.

Mr. Yavoich was awakened by a call or text message from an acquaintance who told him that while he had missed the rally, there were going to be additional speeches at the Capitol, and encouraged him to join her there. By the time Mr. Yavoich arrived at the Capitol, there were many, many people both inside and outside of the building. Mr. Yavoich arrived well after the barricades were breached, and did not see most of the confrontations and fighting between protesters and the police. He saw many people walking through the open Senate door, and

4857-3509-1325, v. 1

decided to go in as well to see what was happening. As is stipulated in the Statement of Offense, Mr. Yavoich enter the Capitol at approximately 2:49 PM. At the time Mr. Yavoich entered the Capitol, there was no law-enforcement presence at the door, although there were police officers standing inside and blocking some, but not all of the corridors. While he was walking down the open corridor, he decided to leave the building, and turned around to retrace his steps. A law enforcement officer directed him to keep going in the same direction, and he immediately complied, proceeding down the corridor to the exit.  He exited the Capitol at 3:06 PM.

Again, Mr. Yavoich acknowledges that it was illegal for him to enter the Capitol. He does wish to emphasize, however, that his intention in doing so was not to try to overturn the election, or to block Congress in the pursuit of its duties. As he makes clear in his letter to this Court, attached as Exhibit B, he did not and does not condone any of the violence that took place on that day, nor did he agree with or support any attempt to overturn the lawful election of President Biden.  Unlike many others who were in the Capitol that day, Mr. Yavoich did not  post anything on social media about the incident at the time, or ever.  He regrets that he entered the building.

**B. The History and Characteristics of the Defendant**

Mr. Yavoich has no criminal record. He appears before the court as a first offender.

Mr. Yavoich's family inculcated in him the value of hard work. As a child, he and his siblings were expected to work around the family farm and shoulder their share of the chores. Mr. Yavoich began working outside of the family home when he was in high school, and his strong work ethic has served him well later in life.

Mr. Yavoich's father was a teacher and a middle school principal. His mother was a homemaker, but also took care of neighbors and friends' children's in the family home. His

4857-3509-1325, v. 1

parents were also foster parents, and formed their own nonprofit corporation to help support foster care for children.

Mr. Yavoich is very close to his family. He speaks to his mother almost every day, and to his father on multiple times per week. He and his brothers are likewise close. All of the siblings have good jobs, with the youngest brother serving in the United States Navy.

Mr. Yavoich graduated from high school in 2001. He worked multiple jobs to help him to pay for community college, and eventually enrolled at Central Pennsylvania College, graduating in 2006. He worked several jobs to help put himself through college. After graduation, he worked as a juvenile probation officer, and later as a customer service representative for American Education Services. He left that employment for an opportunity at JP Morgan/Chase. While he was employed at JP Morgan, he obtained an MBA from Wilmington University in 2018.

Mr. Yavoich worked for Capital One in its foreign exchange office for two years, but then returned to JP Morgan. He has been promoted several times at JP Morgan, and he now works in the cash equities client services department.

As a result of the charges filed in this case, JP Morgan suspended him without pay. As the court knows, his employer told him that it would make up its mind about his future at JP Morgan after he was sentenced. It is Mr. Yavoich's and undersigned counsel's belief that if Mr. Yavoich receives a custodial sentence, he will lose his job. Mr. Yavoich is hopeful that if he receives probation, he will be allowed to return to work.

In addition to his strong work ethic, Mr. Yavoich is a kind and generous person, as attested by a number of his friends who have written to the Court on his behalf. Their letters are attached as Exhibit C. His friends describe him as a man of "genuine kindness and goodwill,"

who has a "passion for helping others," and willingly donates his time and money to help people in need.  (While he has been suspended from his job, Mr. Yavoich has volunteered at the BVSPCA).  He is a good friend and a good person.  Mr. Yavoich "has always been respectful and mindful of others opinions, views, feelings and experiences."

### C. Other Sentences of January 6 Defendants

One of the factors that this court is required to consider is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553 (a)(6). There have been many defendants sentenced in this Court for 5104 (e)(2)(G) charges, and many of those defendants have received a sentence of probation. Attached as exhibit D is a chart which lists many of the cases in which a January 6 defendant has received a probationary sentence. There are a number of factors that make Mr. Yavoich's case a stronger one for probation than almost any of the other cases in which probation was imposed.

First, almost all of the defendants who have pled guilty to a 5104 (e)(2)(G) violation attended the rally on the Ellipse, marched to the Capitol, and at least witnessed, (if not participated in), the breaching of the police barricades and the overwhelming of the Capitol Police which resulted in the doors to the Capitol being forced open. Mr. Yavoich was not present for much of those  events. Because he was ill, he was unaware of the extent of the confrontations between the police and some of the protesters, and did not learn of those facts until after he had left the Capitol area.

Second, unlike many of the other defendants, Mr. Yavoich has never advocated for the overturning of President Biden's election and did not, and does not agree with those defendants'

attempts to prevent Congress from its fulfilling its duty of certifying the election and peacefully transferring executive power from President Trump to President Biden.

Finally, Mr. Yavoich's case presents none of the aggravating factors which were apparent in many other defendants' cases, who nevertheless received a probationary sentence. For example, Mr. Alvear (1:21-cr-115) smoked and distributed marijuana inside the Capitol building. Mr. Blauser (1:21-cr-386) pushed law enforcement officers and was involved in brief skirmishes with them. Mr. Bratjan (1:22-cr-285) was part of a group of individuals pushing through a hallway towards United States Senator Mitch McConnell's offices. Ms. Genco (1:22-cr-62) climbed over a barricade and was part of a crowd that forced officers to retreat at two different barricades. Ms. Homer (1:22-cr-238) was part of a front line of rioters who confronted and taunted U.S. Capitol police officers, Mr. Meteer (1:21-cr-630) had to be forcibly removed from the Capitol by law enforcement. Mr. Spain (1:21-cr-651) posted inflammatory statements regarding civil war on social media before and after January 6. Ms. Vinson (1:21-cr-355) told a local news outlet that she believed her actions were justified, and she would do this all over again tomorrow. All of these defendants (and many others with similar facts) received a probationary sentence. Mr. Yavoich's case for leniency is considerably stronger than those defendants.

### D. Mr. Yavoich Poses Little or No Risk of Recidivism

One of the purposes of sentencing is the desire to protect the public from further crimes by the defendant. This practical concern can be and has been measured and analyzed.  Mr. Yavoich is 40 years old. He does not fit the profile of a person who will commit new criminal offenses or recidivate. The Court should take this data into consideration in its sentencing calculation.

4857-3509-1325, v. 1

The United States Sentencing Commission has objectively quantified the low likelihood of recidivism for an offender like Mr. Yavoich.  For example, a Sentencing Commission study confirms that recidivism rates decline relatively consistently as age increases. *United States Sentencing Commission, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* at 12 (May 2004). The Sentencing Commission's data shows that for persons sentenced at age 36 to 40, whose criminal history is in Category I, (like Mr. Yavoich), almost 88% of the offenders do not recidivate. At age 41, the percent of defendants who do not recidivate increases to over 93%. *Ibid*. at Exhibit 9.

The Commission has also found that first offenders like Mr. Yavoich are rarely re-convicted of a crime. In fact, only 3.5% of first offenders with zero criminal history points are ever re-convicted. *U.S. Sentencing Commission, Recidivism and the First Offender* at Exhibit 6 (May 2004).  Given Mr. Yavoich's background, age, and the nature of the offense itself, the likelihood of Mr. Yavoich re-offending is extremely low, approaching zero.

### E. The Reality of Arrest and Conviction of a Federal Offense Serves as an Adequate Deterrence to Others

Section 3553(a)(2)(B) requires the Court to consider "the need for the sentence imposed to afford adequate deterrence to criminal conduct." There is no need for personal deterrence in this case, for the reasons stated above. Nor is there a need for a custodial sentence to deter others. The consequences already imposed on Mr. Yavoich – his suspension from his job, his arrest, his inclusion on the terrorist watch list, the loss of his clean criminal record, and the loss of his good name, and the respect of his colleagues – have been sufficiently impactful to send a strong message to any other federal  trespasser considering a comparable course of conduct.

## IV. CONCLUSION

Mr. Yavoich - a beloved son, a treasured brother, a kind and generous friend and a hard worker who has put himself through college and risen up through the ranks at his employment through his honest efforts - comes before the Court with a clean record, only marred by the instant offense. He has learned a very hard lesson for the 17 minutes he spent in the United States Capitol.  Of all of the January 6 defendants prosecuted in this Court, his case presents that of a defendant at the very lowest level of culpability. He will live with the knowledge, and the regret, that he committed this offense, which will likely follow him throughout his lifetime. Through his plea and cooperation he has tried to partially atone for this misconduct. He assures the Court that he will live out the rest of his life as a law abiding citizen, and will do his very best to regain his good name. He stands ready to accept whatever sentence this Court deems appropriate.

Date: August 30, 2023                    Respectfully submitted,

                                         */s/ James P. Ulwick*
                                         James P. Ulwick (D.C. Bar No. 287763)
                                         **KRAMON & GRAHAM, P.A.**
                                         One South Street, Suite 2600
                                         Baltimore, Maryland 21202
                                         (410) 752-6030 (telephone)
                                         (410) 539-1269 (facsimile)
                                         julwick@kg-law.com


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 30th day of August, 2023, a copy of the foregoing was filed electronically via CM/ECF, which effected service on counsel for all parties.

                                         */s/ James P. Ulwick*
                                         James P. Ulwick